# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **DORIS HESS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:20CV00062 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **BUCHANAN COUNTY PUBLIC** | ) | By: James P. Jones |
| **SERVICE AUTHORITY, ET AL.,** | ) | United States District Judge |
| | ) | |
| Defendants. | | |

*Steven R. Minor,* ELLIOTT LAWSON & MINOR, *Bristol, Virginia, for Plaintiff; Cameron S. Bell,* PENNSTUART, *Abingdon, Virginia, for Defendants.*

The plaintiff, a woman formerly employed by a local public service authority, has filed this workplace sex discrimination claim under 42 U.S.C. § 1983 and Title VII against her male supervisor and the authority. The defendants have jointly filed a Motion to Dismiss for failure to state a claim. The motion will be denied for the reasons that follow.

## I.

The Amended Complaint (hereinafter "Complaint") alleges the following facts that I must accept as true for the purpose of deciding the Motion to Dismiss.[1]

---

[1] The Motion to Dismiss was filed in response to the original Complaint. The plaintiff then filed the Amended Complaint and the parties briefed and argued the Motion to Dismiss in the light of the Amended Complaint, which by implicit agreement they and the court agreed then spoke to the Amended Complaint.

From 2001 until February 2020 the plaintiff Doris Hess worked at the Buchanan County Public Service Authority ("Authority") as a supervisor for the water meter readers, and as the clerk for the Authority's governing board.  As supervisor, she oversaw meter readers, loaded and unloaded the meters, printed bills and processed payments, and coordinated meter maintenance.  She also handled administrative tasks such as working in the computer room, answering the phones, and cleaning and ordering supplies for the main office.

In November 2018 the Authority hired defendant Bob Anderson as its executive director.  From then until September 2019 — a span of roughly ten months—Anderson touched Hess' neck, chest, shoulders, and back; winked at Hess; stuck out his tongue at her; made sexual jokes; commented to her about sexual practices; and told anecdotes about people smoking cigarettes after having sex.  Anderson "made plain" that her employment was conditioned upon enduring this conduct.  Compl. ¶ 14, ECF No. 12.  Hess "made plain" to Anderson that she did not welcome this behavior, although the Complaint does not specify when this occured.  *Id*. ¶ 15.

On September 4, 2019, Anderson and Gale Edwards, the Authority's office manager, met with Hess to discuss her job performance.  Anderson told Hess that he had received reports that she was dissatisfied with her job, she had been looking for other positions, and that she disrupted last month's billing cycle by her reluctance

and ultimate failure to get trained on new software.  Anderson and Edwards wrote a memorandum that same day documenting the meeting.  It stated that "changes are being made to [Hess'] work schedule and job requirements effective Monday September 9, 2019" and that she would "trad[e] positions" with another employee whom they requested her to train.  Compl. Ex. 2, Mem., ECF No. 12-2.  Her pay rate would remain the same.

Hess received medical treatment the day after her reassignment and again about two weeks later on September 20, 2019.  On the latter date, her medical provider issued her a six-month work leave for anxiety and pain in her knee and back.  On October 16, 2019, Hess' attorney made a request in writing to the Authority demanding that Anderson cease his "unwelcome . . . sexual advances."  Compl. Ex. 5, Letter 1, ECF No. 12-5.  The Authority never took remedial action in response to the letter.  Instead, it terminated Hess on February 10, 2020.  She then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

Hess seeks relief under 42 U.S.C. § 1983 on the basis that Anderson violated her right against sex discrimination guaranteed by the Fourteenth Amendment's Equal Protection Clause, under the theory of quid pro quo sexual harrassment.  She

claims that the Authority is equally liable as an employer under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-3(a) ("Title VII").[2]

The defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(6) for two reasons. First, they claim that Hess cannot bring a Title VII claim because she failed to administratively exhaust a quid pro quo claim with the EEOC.[3] Next, they argue that the Complaint does not state a quid pro quo sexual harassment claim in any event, because it does not allege that Hess' reassignment was a tangible employment action, as that claim requires. The motion has been fully briefed and orally argued and is ripe for review.

II.

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court's "inquiry is to determine whether the facts alleged in the plaintiff's complaint are legally sufficient to state a claim upon which relief can be granted." *Fessler v. IBM Corp.*, 959 F.3d 146, 151–52 (4th Cir. 2020).[4] "Because

---

[2] Although the Complaint alleged a third claim under the Americans with Disabilities Act, 42 U.S.C. §§ 12112, 12117 ("ADA"), Hess' counsel represented at the motion to dismiss hearing that she had abandoned that claim.

[3] Title VII's administrative exhaustion requirement is a non-jurisdictional claim-processing rule. *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1850 (2019). Thus, claiming that a plaintiff failed to exhaust Title VII's administrative remedies before filing suit is an argument for dismissal properly raised through a Rule 12(b)(6) motion. *See, e.g.*, *Simko v. U.S. Steel Corp.*, 992 F.3d 198, 204, 216 (3d Cir. 2021).

[4] Internal quotation marks, citations, and alterations have been omitted throughout this Opinion unless otherwise stated.

only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, [the court] assume[s] the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Id*. "To survive a motion to dismiss, [the court] require[s] 'only enough facts to state a claim to relief that is plausible on its face.'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III.

The Fourteenth Amendment's Equal Protection Clause and Title VII provide a public employee rights against sex discrimination by their employer. *Wilcox v. Lyons*, 970 F.3d 452, 457-58 (4th Cir. 2020). The Equal Protection Clause proclaims that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This prohibits state actors from "treating differently persons who are in all relevant respects alike," including "[d]istinctions on the basis of sex or gender," unless the government can justify doing so under an intermediate scrutiny analysis. *Wilcox*, 970 F.3d at 458. Although "[s]exual harassment is conceptually distinct from sex discrimination," *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020), the two can "overlap." *Wilcox*, 970 F.3d at 462. Sexual harassment in the workplace can take the form of sex discrimination where, "but for the employee's gender, he or she would not have been the victim" of the offensive conduct. *Hoyle v. Freightliner, LLC,* 650 F.3d 321,

331 (4th Cir. 2011). This type of "[i]intentional sex discrimination" couched as "sexual harassment against public employees . . . violate[s] the Equal Protection Clause." *Wilcox*, 970 F.3d at 458.

Under the same rationale, "[s]exual harassment . . . can [also] fall within Title VII's sweep" prohibiting discrimination. *Bostock*, 140 S. Ct. at 1747. That Section of the Civil Rights Act makes it unlawful to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" because of their sex. 42 U.S.C. § 2000e-2(a)(1). Thus, Title VII prohibits "quid pro quo" sexual harassment where, on the basis of the employee's sex, a "supervisor demands sexual consideration [from them] in exchange for job benefits." *Katz v. Dole*, 709 F.2d 251, 254 (4th Cir. 1983) (distinguishing quid pro quo and hostile work environment theories of sexual harassment).

There are separate causes of action available for a public employee to vindicate these rights. Section 1983 creates a cause of action against a person acting under color of state law who violated the plaintiff's right under the Equal Protection Clause. 42 U.S.C. § 1983. Title VII itself authorizes suit against their employer. 42 U.S.C. § 2000e-5(f)(1). The Fourth Circuit has applied a "similar framework" in analyzing workplace discrimination under the Equal Protection Clause and Title VII, although the two are "not identical." *Wilcox*, 970 F.3d at 462. One difference relevant here is that "[a]s a precondition to the commencement of a Title VII action

in court, a complainant must first file a charge with the Equal Employment Opportunity Commission." *Fort Bend Cnty. v. Davis*, 139 S. Ct. at 1846; 42 U.S.C. § 2000e-5(e)(1), (f)(1).

## A.

The defendants first argue that Hess failed to administratively exhaust a quid pro quo claim in her EEOC Charge.[5]  The Charge alleged that "Anderson sexually harassed [Hess] with unwanted attention in the workplace, causing her severe emotional distress," and "[i]n retaliation for her rejection of his advances, . . . she was removed from her position in the office" and reassigned to the computer room. Suppl. Reply Mem. Ex. 1, Charge of Discrimination, ECF No. 17-1.

"A plaintiff's EEOC charge defines the scope of her subsequent right to institute a civil suit." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).  But the "administrative charge of discrimination does not strictly limit a Title VII suit which may follow." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002).  "If a plaintiff's claims in her judicial complaint are reasonably related to her EEOC charge and can be expected to follow from a reasonable administrative investigation, the plaintiff may advance such claims in her subsequent civil suit."

---

[5] The defendants attached the Charge to their motion.  Mot. Ex. 1, Charge of Discrimination 1, ECF No. 17-1.  I may consider it without converting the motion into one for summary judgment because it is "explicitly incorporated into the complaint by reference." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

*Smith*, 202 F.3d at 247.  The exhaustion requirement "ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible."  *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005).

I find that Hess has administratively exhausted this claim, because it is within the scope of her EEOC Charge.  The Charge's claims are reasonably related to the Complaint's allegation that Anderson demanded Hess endure his harassment in exchange for her continued employment, and reassigned her because she refused.  To be sure, the Charge did not specifically allege that Anderson made this demand 'plain' or explicitly use the term 'quid pro quo' as alleged in the Complaint.  But those discrete allegations fall within the Charge's broader claims and could have been uncovered through an administrative investigation.  Moreover, the Charge was sufficient to put the defendants on notice of the substance of the claim.  Thus, Hess may proceed with a claim under Title VII.

B.

The defendants next argue that the Complaint has failed to plausibly allege each element of a quid pro quo claim in any event.  To state a claim for quid pro quo sexual harassment, a plaintiff must plausibly allege:

> 1 The employee belongs to a protected group.
>
> 2 The employee was subject to unwelcome sexual harassment.
>
> 3 The harassment complained of was based upon sex.

>       4 The employee's reaction to the harassment affected *tangible aspects* of the employee's compensation, terms, conditions, or privileges of employment. The acceptance or rejection of the harassment must be an express or implied condition to the receipt of a job benefit or cause of a tangible job detriment to create liability. Further, as in typical disparate treatment cases, the employee must prove that she was deprived of a job benefit which she was otherwise qualified to receive because of the employer's use of a prohibited criterion in making the employment decision.
>
>       5 The employer, as defined by Title VII, 42 U.S.C. § 2000e(b), knew or should have known of the harassment and took no effective remedial action.
>
> With the fourth element, a *tangible employment action* constitutes a significant change in employment status, such as hiring, firing, failing to promote, *reassignment with significantly different responsibilities*, or a decision causing a significant change in benefits. The fifth element is automatically met when the harassment was alleged to have been perpetrated by a supervisor.

*Okoli v. City of Baltimore*, 648 F.3d 216, 222 (4th Cir. 2011) (emphasis added). Elements one, two, three, and five are not disputed here. The Complaint alleges that Anderson, Ms. Hess' supervisor, subjected her to unwanted touches, sexually explicit comments, and suggestive gestures, because she is a woman. Compl. ¶ 13, ECF No. 12.

The defendants take aim at the fourth element, which requires a plaintiff to show an "express or implied" conditional arrangement; that the plaintiff was deprived of a benefit they were "otherwise qualified to receive;" and that the employment action was "tangible." *Okoli,* 648 F.3d 216 at 222.

Here, the Complaint alleges an express or implied conditional arrangement of harassment in exchange for employment which Anderson "made plain." Compl. ¶ 14, ECF No. 12. And it is plausible to infer that Hess was otherwise qualified for a position she had held for many years.

Nevertheless, the defendants contend that Hess' transfer was not a tangible employment action because she was merely reassigned to a new building. But the Complaint does not just allege her office location changed. It alleges the Authority assigned her "significantly different responsibilities." *Okoli*, 648 F.3d at 222. Indeed, the September 4, 2019, memorandum stated that her "job requirements" would "change[]" as she was "trading positions" with another employee. Mem., ECF No. 12-2. Since Hess had been reassigned in part for poor performance with the billing and meter reading responsibilities incumbent upon her as a supervisor, it is reasonable to infer that her new role in the computer room would not carry as much, if any, responsibility for these tasks.

The defendants also argue that terminating Hess on February 10, 2020, before she ever returned to serve in her new role somehow renders the employment action speculative. But courts of appeals have recognized that an employment action is "tangible" when an "explicit alteration" of an employment condition occurs. *See e.g., Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 604 (2d Cir. 2006). The Authority made that explicit alteration in September 2019. Hess' failure to serve in

the new role before the Authority fired her does nothing to negate the Authority's action.

In sum, the Complaint has plausibly alleged each element of a quid pro quo sexual harassment claim, including the fourth element that Hess' "reaction to the harassment affected tangible aspects of [her] . . . employment." *Okoli*, 648 F.3d at 222. She has stated claims under the Equal Protection Clause and Title VII.

IV.

For the foregoing reasons, it is **ORDERED** that the defendants' Motion to Dismiss the Amended Complaint, ECF No. 8, is DENIED.

ENTER: June 9, 2021

/s/ JAMES P. JONES
United States District Judge